**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


AYSHEH, INC.,

       Plaintiff,

v.                                No. CIV-04-966 BB/WDS

MARYLAND CASUALTY
COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of Defendant's Motion for Summary Judgment filed May 19, 2005. ("Motion," Doc. 28.)  The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendant's Motion should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

On April 1, 2001, Defendant Maryland Casualty Company ("Defendant") issued an insurance policy ("Policy") to Plaintiff Aysheh, Inc. ("Plaintiff") that included property insurance covering Gallup Indian Plaza -- a commercial complex consisting of a jewelry store, a service station, and a convenience store.  An independent broker, Bubany Insurance Agency ("Bubany") issued the Policy to Plaintiff, after Plaintiff requested that the policy cover potential problems, "from A to Z."  Plaintiff complied with all of its obligations under the Policy, which had coverage dates from April 1, 2001 through April 1, 2002.

In late April 2001, the underground water line that connected Gallup Indian Plaza's fire sprinkler system to city water developed a major leak.  Over the next year it took to locate and repair the leak, Gallup Indian Plaza sustained water damage to its parking lot, concrete slabs, and structures on the property.

In May 2002, Plaintiff submitted a claim for losses due to the water leak.  Defendant paid for the cost of repairing the actual water leak, but denied the remainder of Plaintiff's claims.  Defendant argues that the remainder of Plaintiff's claims are not covered by the Policy.  Specifically, Defendant argues that some of Plaintiff's claims are not related to the water leak; that the Policy excludes damages to paved surfaces; and that the Policy does not cover the cost of improvements to Plaintiff's property.

## II. STANDARD OF REVIEW

 "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Medina v. Income Support Div.,  413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587-88 (1986).

To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential

element of the case.  Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016-17 (10th Cir. 2001)(citing

Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the

Court must draw reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at

587.  To survive a motion for summary judgment, affidavits must show that the witness has

personal knowledge and must set forth facts that would be admissible in evidence; conclusory and

self-serving statements are insufficient.  Salguero v. City of Clovis, 366 F.3d 1168, 1177 n.4 (10th

Cir. 2004).  While the evidence need not be in a form that is admissible at trial, the content or

substance of the evidence must be admissible.  Pastran v. K-Mart Corp., 210 F.3d 1201, 1204 n.1

(10th Cir. 2000).

### III. DISCUSSION

Repair of the Water Leak

     Defendant first moves the Court to dismiss Plaintiff's claim to recover the cost of repairing

the water leak.  The undisputed record makes clear that Defendant fully compensated Plaintiff for

the cost of repairing the water leak.  Deft. Exh. 8 at 18; Deft. Exh. 2 at 2; Pltf. Resp. to S. J. Mot.

at 5, n.1.  Therefore, summary judgment will be granted as to this claim.

Repair of Parking Lot and "Other Paved Surfaces"

     Policy Language

     Defendant next moves the Court to dismiss Plaintiff's claim regarding the coverage of

repairs to Plaintiff's parking lot and other paved surfaces, arguing that the terms of the Policy

expressly exclude coverage of paved surfaces.  Defendant argues that the Policy sets forth two

conditions which must be met before the insurance company will pay for any loss: first, that a

"covered property" must be damaged; and, second, that the damage must occur due to a "covered

cause of loss."  Indeed, the first sentence of the Policy states that the insurer "will pay for direct

physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of

Loss."  Deft. Exh. 3 at 7.  Plaintiff argues that, because the Policy provides that the insurer "will

for the loss or damage caused by . . . sprinkler leakage," the insurer is obligated to pay for any

damages caused by sprinkler leakage.  Pltf. Resp. to S. J. Mot. at 6.  However, Plaintiff reads the

Policy out of context by overly emphasizing this "Covered Causes of Loss" section.  Deft. Exh. 3

at 7.  Once the relevant provisions are read together, it is clear that, although a leak in a sprinkler

system is a covered *cause* of loss, paved surfaces are not a covered *property.*  See id. (noting that

"[c]overed property does not include . . . paved surfaces.").  Thus, Plaintiff has only demonstrated

that one of the two conditions set forth in the written policy were satisfied.

Defendant asserts that the asphalt parking lot, concrete sidewalks, and concrete pump

islands are excluded by the pavement provisions because they are "paved surfaces."  However,

although it is clear that paved surfaces are expressly excluded by the Policy, the definition of

"paved surfaces" remains unclear.  The portion of the Policy provided by Defendant in support of

its motion to dismiss does not include the "Definitions" section of the policy.  See Deft. Exh. 3 at

7 (including a table of contents indicating the existence of a section of the Policy titled

"Definitions.").  Both Plaintiff's and Defendant's experts refer to some concrete structures as

"concrete slabs," rather than "pavement."  <u>See</u> <u>generally</u> Deft. Exh. 1; Pltf. Unmarked Exh. D[1]

(attached to the complaint).   Because asphalt lots are generally considered pavement, and the

reports of both experts seem to accept this characterization, the Court will grant summary

judgment on Plaintiff's claim for damages to the asphalt parking lot insofar as the claim is based

on the express language of the Policy.  However, because it is unclear whether "paved surfaces"

includes the concrete structures at issue, the Court will deny summary judgment as to those

claims.

<u>Reasonable Expectations</u>

Plaintiff argues that, even if the terms of the Policy exclude coverage for damages to

paved surfaces, Plaintiff may still prevail under the doctrine of reasonable expectations.  The New

Mexico Supreme Court has noted that, "[w]hen deciding whether an exclusionary clause is

effective to nullify coverage under an insurance policy, we give consideration to the reasonable

expectations of the insured."  <u>Barth v. Coleman</u>, 878 P.2d 319, 323 (N.M. 1994).  The doctrine

may apply "when the language of an insurance policy or representations of the insurance company

lead an insured to reasonably expect coverage."  <u>Berlangieri v. Running Elk Corp.</u>, 44 P.3d 538,

541 (N.M. Ct. App. 2002).  The doctrine is available when the policy language is ambiguous;

---

[1]Of those exhibits attached to the complaint, Plaintiff only marked one (Exhibit B). Using that system, the Plaintiff's expert report would appear as Exhibit D if marked. The Court has considered this report even though it was not specifically submitted as an exhibit for purposes of summary judgment. <u>See</u> Fed. R. Civ. P. 56(c) (pleadings on file must be considered in reviewing motion for summary judgment); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) ("Where the record *taken as a whole* could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (emphasis added)).

often, however, "the dynamics of the insurance transaction, and not the language of the contract itself, determine what the reasonable expectations of the insured are."  See Barth, 878 P.2d at 323.  While the Court agrees that the express written terms of the Policy are unambiguous and clearly exclude damage to paved surfaces from coverage, Defendant has not adequately demonstrated the absence of any issue of material fact regarding Plaintiff's claim that his "reasonable expectations" should be incorporated into the Policy.   In Barth, the court noted that "[t]he insured's expectations were in large degree created by the intermediaries involved in the transaction." Id. at 324.  Because the knowledge and acts of an agent are generally imputed to the principal, the court engaged in an extended discussion regarding whether the insurance agent in that case was an agent of the insurer or the insured. Id. at 324-25.  In this case, it is also important to determine the broker's principal, in order to determine who should bear responsibility for the representations of the broker.   If, as Defendant suggests, the broker served exclusively as Plaintiff's agent during the transaction, Plaintiff would be bound by the broker's acts and representations.  Thus, the  fact-sensitive determination of the agency of Bubany is critical to the determination of whether the "dynamics of the insurance transaction" substantiate Plaintiff's reasonable expectations claim.  See Barth, 878 P.2d at 325.

In Barth, the Supreme Court of New Mexico set forth the general rule that an insurance broker represents the insured.  See Barth, 878 P.2d at 325.  However, the court also noted two factors relevant to the case at bar.  See id. at 325-26.  First, the Barth court noted that insurance brokers may serve ambiguous and/or dual roles during transactions.  Id.  Second,  the court noted that commission payments from the insurer to the broker, if any, would be relevant to any

determination of agency.  Id.  While Plaintiff repeatedly refers to Bubany as "Defendant's agent,"

see generally Pltf. Resp. to S. J. Mot.,  Defendant filed an affidavit showing that Bubany is an

insurance broker without an exclusive relationship with Defendant, that Defendant does not own

Bubany, and that Defendant does not employ any of Bubany's agents or employees.  See Deft.

Exh. 2.  Defendant's affidavit does not address the nature of the roles performed by the broker or

whether the broker received commission payments from the Defendant.  Therefore, Defendant's

affidavit is insufficient to meet Defendant's burden to establish the absence of a genuine issue of

material fact as to the agency issue.

Defendant also argues that the doctrine of reasonable expectations cannot apply because

Plaintiff's request that the agent obtain coverage "from A to Z, from the smallest thing to the

largest thing that could happen to my business" cannot be reasonably understood to include

coverage to all paved surfaces at Gallup Indian Plaza.  However, Plaintiff's statement can be

reasonably understood to mean that Plaintiff did not want the Policy to contain any exclusions.[2]

The extent of  Bubany's understanding of Plaintiff's requests and the content of Bubany's

---

[2]This Court notes that Berlangieri v. Running Elk Corp., 44 P.3d 538 (N.M. Ct. App. 2002), is
factually distinguishable from this case.  In that case, the court noted that "[n]owhere in the
record is there evidence that [the insured] asked [the insurance agent] to obtain blanket
coverage."  In this case, however, the record reflects that Mohammed Aysheh claims he did make
a request for what could be understood as coverage without any exclusions. Pltf. Material Fact 1.
Moreover, while the Berlangieri court focused on the Plaintiff's solely subjective expectation for
coverage, 44 P.3d at 543, the Plaintiff in this case claims the request for coverage was made
known to the agent at the time of the transaction.  Pltf. Material Fact 1.  Therefore, the Court
finds Berlangieri sufficiently distinguishable from the case at hand.

representations obviously present questions of material fact.  Therefore, the Court will deny

summary judgment on this issue.

Causation of Damages

Contested Matters

Defendant also moves this Court to dismiss Plaintiff's claims for damages to property

which Defendant's expert, Mr. Douglas McLeod, has concluded were not caused by the water

leak.  See Deft. Exh. 1.  However, Plaintiff submitted an expert's report on damages caused by

the water leak, attached to the Complaint in this case, that disagrees with Defendant's report on

the extent to which certain damages were caused by the water leak.  See generally Pltf. Unmarked

Exh. D (attached to the complaint).

For example, Defendant specifically requests summary judgment on Plaintiff's claims for

repairs "to the upper floor residence and the concrete supports for the gas station canopy."  Deft.

Mem. Supp. Mot. Summ. Judg. at 9.  However, Plaintiff's expert report documents cracking of

the structures of the living quarters on the second floor, including signs of differential settlement

caused by the water leak.  Pltf. Unmarked Exh. D at 2.  Given these conflicting accounts

regarding the upper floor residence, Defendant has failed to meet its burden to show an absence

of an issue of material fact, and Defendant's motion on this portion of the damages must be

denied.

Defendant also specifically requests summary judgment on Plaintiff's claims to repair tile

and drywall damage.  Deft. Mem. Supp. Mot. Summ. Judg. at 9.  Because Plaintiff's expert

disagrees with the conclusion of Defendant's expert on whether the damage to tile and drywall

was caused by the water leak, the Court will deny summary judgment.  <u>Compare</u> Deft. Exh. 1 at

3, 4, 5, 6 (concluding that cracks in drywall and tile were not caused by water leak) <u>with</u> Pltf.

Unmarked Exh. D at 2, 4 (noting damages caused by the water leak and including cracks to

drywall and tile walls).

In addition, while Defendant's expert asserts that the gas pump tanks were not affected by

the water leak, Deft. Exh. 1(B) at 2 (Letter from McLeod to Allen of 02/20/03), Plaintiff's expert

believes the gas tanks did require pumping to remove excess water from the water leak. Pltf.

Unmarked Exh. D at 2.  Finally, while Defendant's expert concluded that there was no evidence

of heaving and/or differential settlement to the foundational structures, Deft. Exh. 1 at 5,

Plaintiff's expert concluded that some damage on the second floor of one of the buildings was due

to differential settlement of the soils.  Pltf. Unmarked Exh. D at 2.   As to these contested matters,

then, the Court must again deny summary judgment.

Also, Defendant's expert identifies tilting of the island in the direction of localized runoff

from the buildings, and concludes that the heaving of the island (and the resulting damage to the

gas station canopy) is due to the runoff from the buildings.  Deft. Exh. 1 at 5, 6.  Although

Plaintiff's expert agrees that "some of the roof drains are 'dumping' water in depressions created

by the island heaving," Plaintiff's expert seems to indicate that the drains are only dumping water

into depressions that were caused by heaving due to the water leak.  Pltf. Unmarked Exh. D at 4.

The Court thus finds that a genuine issue of material fact remains as to the causation of damages

to the pump island and will also deny the motion for summary judgment as to this claim.

Finally, the Court notes that Defendant's own expert concedes that some damages were probably caused by the water leak.  For example, Defendant's expert concluded that the binding of some steel vault doors was "likely" to be caused by the expansion of soils caused by the water leak.  Deft. Exh. 1 at 3.  In addition, both Plaintiff's expert and Defendant's expert agree that the concrete slab at the convenience store east entry has uplifted due to expansion of the underlying soils, which was caused by the water leak.  See Deft. Exh. 1 at 6; Pltf. Unmarked Exh. D at 3.  As to those damages that even Defendant's expert agrees were likely to be caused by the water leak, the Court will deny summary judgment.

Improvements

Defendant further moves this Court to dismiss Plaintiff's claim insofar as it demands Defendant to install a positive ventilation system that did not exist prior to the water leak.  Deft. Mem. Supp. Summ. Judg. at 9.  Defendant argues that, as a legal matter, the terms of the Policy would not require Defendant to pay for a ventilation system, which would assist in removing excess moisture beneath one of Plaintiff's buildings, because Plaintiff did not have a ventilation system installed before the water leak.  Plaintiff counters that the ventilation system is necessary to remediate the water damage.  The Policy states that the insurer "will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss."  Deft. Exh. 3 at 7.

Under New Mexico law, "[t]he obligation of an insurer is a matter of contract law and must be determined by the terms of the insurance policy."  State Farm Mutual Automobile

-10-

Insurance Co. v. Baldonado, 75 P.3d 413, 416 (N.M. Ct. App. 2003).  In addition, "[a]n

insurance contract should be construed as a complete and harmonious instrument designed to

accomplish a reasonable end." Id.   The factual record contains reports of both Plaintiff's and

Defendant's experts who agree that a ventilation system should be installed. See Deft. Exh. 1 at

6; Pltf. Unmarked Exh. D at 4 (recommending "provid[ing] positive mechanical ventilation of the

crawl space to accelerate the elimination of water under the building."). Therefore, Defendant has

failed to demonstrate an absence of material fact as to the issue whether a positive ventilation

system is necessary to repair the damage to Plaintiff's property and its motion for summary

judgment must be denied.


Bad Faith Claims

Finally, Defendant moves this Court to dismiss Plaintiff's bad faith claims.  Defendant

asserts that it acted reasonably in handling and investigating Plaintiff's claims, because Defendant

hired an expert to independently evaluate Plaintiff's claims and subsequently provided Plaintiff

with a letter detailing Defendant's basis for denying Plaintiff's claims.  Plaintiff failed to respond

to any of these assertions in its Reply Brief, and the Court cannot find any factual basis in the

record to support the claim.  In the absence of any facts in the record supporting Plaintiff's bad

faith claim, this Court will deem the claim abandoned and grant the motion.

### V. ORDER

It is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. 28) is

GRANTED IN PART AND DENIED IN PART.

**DATED** at Albuquerque, this 26th day of August, 2005.


_____

BRUCE D. BLACK
United States District Judge

Attorneys:

For Plaintiff

Jordan & Rosebrough, P.C.
David R. Jordan
101 W. Aztec Ave., Suite A
P.O. Box 840
Gallup, N.M. 87305-0840


For Defendant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Seth L. Sparks
P.O. Box 1888
Albuquerque, N.M. 87103